## SCULLY *v.* BIRD.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF MICHIGAN.

No. 353. Submitted April 20, 1908.—Decided May 4, 1908.

This court will not assume an inconsistency to exist between the opinion of
the Circuit Court and its certificate.

On certificate that the bill was dismissed solely because the suit was against
the State within the meaning of the Eleventh Amendment and therefore
not within the jurisdiction of the Federal court as such, this court cannot
determine whether the bill should have been dismissed because not pre-
senting a case for equitable relief.

A suit by a citizen of another State to restrain a state officer from improperly
enforcing a state statute, where no criminal prosecution has been com-
menced, *held,* in this case, not to be an action against the State within the
meaning of the Eleventh Amendment.

THE facts are stated in the opinion.

*Mr. E. T. Fenwick,* for appellants:

The prohibition of the Eleventh Amendment does not apply
where a suit is brought against defendants who, claiming to
act as officers of the State, and under color of a statute which
is valid and constitutional, but wrongfully administered by
them, commit, or threaten to commit, acts of wrong or injury
to the rights and property of the plaintiff, or make such ad-
ministration of the statute an illegal burden and exaction upon
the plaintiff. Bates Fed. Eq. Pro. (1901 ed.), § 560, Subd. 4;
*Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 388.

Nor where an individual is sued in tort for some act injurious
to another in regard to person or property, to which his defense
is that he has acted under the orders of the government. In
this class of cases, the defendant is not sued as, or because he
is, the officer of the government, but as an individual, and the
court is not ousted of jurisdiction because he asserts authority
as such officer. To make out his defense, he must show that

VOL. CCIX—31

his authority in law was sufficient to protect him. *Cunningham* v. *Macon & Brunswick R. Co.,* 109 U. S. 451.

The State is a political corporate body, can act only through its agents, and can command only by laws. It is necessary, therefore, for a defendant who seeks to substitute the State in his place, to produce a law of the State which constitutes his commission as its agent, and a warrant for his act. Bates, § 560, Subd. 8; *Poindexter* v. *Greenhow,* 114 U. S. 288.

Whenever a citizen of a State can go into the courts of a State to defend his property against the illegal acts of its officers, a citizen of another State may invoke the jurisdiction of the Federal courts to maintain a like defense. Bates, § 560, Subd. 9; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 391.

The suit at bar might have been maintained in the state courts of Michigan against said defendant. *Pratt Food Co.* v. *Bird,* 148 Michigan, 631.

The statutes of Michigan confer no authority upon the defendant to do the acts of which complaint is made against him in this case. Comp. Laws Michigan, § 4978.

The suit at bar should not have been dismissed under § 5 of the act of 1875. U. S. Comp. Stat., § 639; *Farmington* v. *Pillsbury,* 114 U. S. 138; *Williams* v. *Mattawa,* 104 U. S. 212; *Mattocks* v. *Baker,* 2 Fed. Rep. 457.

The question whether the suit at bar is, in legal effect, a suit against the State is one on the merits of the case, and it was error for the trial court to hold that it was a question of jurisdiction, and to dismiss the bill on that account for want of jurisdiction. *Ill. Cent. R. R. Co.* v. *Adams,* 180 U. S. 28.

*Mr. John E. Bird,* Attorney General of the State of Michigan, and *Mr. George S. Law,* for appellee:

A decree denying the temporary injunction and dismissing the bill of complaint, was the only decree that could have been rendered by the Circuit Court. *Arbuckle* v. *Blackburn,* 113 Fed. Rep. 616; *S. C.,* 191 U. S. 405.

*Pratt Food Co.* v. *Bird,* 148 Michigan, 641, relied upon by

complainants, is rather an authority for the contention of defendant. It gives complainants ample remedy by proceedings in the state courts. *Freeney* v. *First National Bank,* 16 Fed. Rep. 433.

Whether or not this proceeding is a suit against the State, the decision of the Circuit Court was correct. *Penna. Ry. Co.* v. *Wabash Ry. Co.,* 157 U. S. 225; *Moffatt* v. *Smith,* 101 Fed. Rep. 771; 3 Cyc. 221, and cases cited.

The Circuit Court had the right at any stage of the proceedings, and upon its own motion, to dismiss the bill for want of jurisdiction. 11 Cyc., p. 701, and cases cited; *Heriot* v. *Davis,* Fed. Cases, No. 6,404 (2 Woodb. & M. 229).

MR. JUSTICE MCKENNA delivered the opinion of the court.

This is an appeal directly from the Circuit Court from a decree dismissing the bill of appellants for want of jurisdiction.

The bill sought an injunction against certain acts of the appellee, who is the dairy and food commissioner of the State of Michigan, and who, it is alleged, under cover of his office is injuriously affecting the reputation and sale of certain products manufactured by appellants. The acts complained of will be detailed more fully hereafter. It is enough to say preliminarily that appellants alleged in their bill that their business is the manufacturing, refining and selling of various food products, and more particularly the manufacturing, blending and selling of syrups used for food products; that their principal place of business is in Chicago, and that their business is "commonly recognized and known as an honorable and legitimate commercial industry and a legal and necessary adjunct to organized society;" and that they have large quantities of their products in Michigan "which prior to the acts complained of, found a ready sale in that State, which sales resulted in fair and continuous profit" to them.

The court dismissed the bill, and recites in its certificate that the decree "was made and entered by the court on its own motion and without notice to any of the parties to this suit or

their attorneys, except that the question of jurisdiction was argued on the motion for preliminary injunction, it appearing to the court from the face of the bill that this suit is, in effect, a suit against the State of Michigan within the meaning of the Eleventh Amendment to the Constitution of the United States, and that, therefore, this suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of a Federal court."

The court expressed its reason for its action in an opinion as follows:

"Upon examination of the authorities cited upon the arguments had in this cause upon the matters above related, it is clear that the case of *Arbuckle* v. *Blackburn, Dairy and Food Commissioner of Ohio,* 113 Fed. Rep. 616 (C. C. A.), is conclusive against the jurisdiction of a court of equity over the matters set forth in the bill. It is argued in behalf of complainants that the case at bar is differentiated from that decision of the Court of Appeals in the case just cited. It is not perceived that there is any substantial difference in the facts of the two cases which would exclude the application of *Arbuckle* v. *Blackburn.* That case is conclusive that this court has no jurisdiction to entertain a suit of this nature, and the only order which can be made in this case, notwithstanding the entry of the order *pro confesso,* is one for a dismissal of the bill for want of jurisdiction."

*Arbuckle* v. *Blackburn* was appealed to this court, but the appeal was dismissed, on the ground that the jurisdiction of the Circuit Court was " 'dependent entirely upon the opposite parties to the suit or controversy being  .  .  .  citizens of different States,' and the decree of the Circuit Court of Appeals was final." The questions passed on by the latter court were not considered or decided. 191 U. S. 405.

The Attorney General of the State, who appears as counsel for the appellee, does not contend that this is a suit against the State. He says: "Counsel for defendant did not claim in the Circuit Court, and do not now claim, that this proceeding is a suit against the State. It is our contention that under the de-

cision of the Circuit Court of Appeals in the case of *Arbuckle* v. *Blackburn, supra,* a Federal court of equity has no jurisdiction of the subject-matter of the bill of complaint, viz., that it has no jurisdiction to restrain the dairy and food commissioner of a State from issuing bulletins or circulars claiming that an article of food is in violation of the criminal laws of a State."

And it is urged that such was the reason given by the court in its opinion and order dismissing the bill, and that as the decision of the court was right it should not be reversed, because the reason given for it in the certificate was not the correct reason. But we cannot assume that there is inconsistency between the opinion and order of the court and its certificate. We, therefore, accept the latter as expressing the ground of the court's action. We would have no jurisdiction on this appeal unless the jurisdiction of the Circuit Court was in question as a Federal court; and whether the bill presented a case for equitable relief does not present a question of the jurisdiction of the court as a court of the United States. *Blythe* v. *Hinckley,* 173 U. S. 501; *Illinois Central R. R. Co.* v. *Adams,* 180 U. S. 28, 35. Indeed, it is urged by appellant that whether a suit is one against a State is not a question of jurisdiction, but a question on the merits, and *Illinois Central R. R. Co.* v. *Adams, supra,* is cited.

That suit was brought by the railroad company against Adams, who was a revenue agent of the State of Mississippi, and the railroad commission of the State, to enjoin the latter from certifying an assessment for taxes on a railroad in which the Illinois Central had an interest and to enjoin the revenue agent from beginning any suit or advising any of the municipalities along the line of the road to bring suit for the recovery of such taxes. The bill was dismissed for want of jurisdiction and the case was appealed to this court. One of the grounds for the dismissal was, as certified, "that there was no jurisdiction in this matter because the bill was a suit against the State of Mississippi and in violation of the Eleventh Amendment to the Constitution of the United States." We said, by Mr. Jus-

tice Brown, that such a question is "one which we think belongs to the merits rather than to the jurisdiction." And further: "If it were a suit directly against the State by name, it would be so palpably in violation of that Amendment that the court would probably be justified in dismissing it upon motion; but the suit is not against the State, but against Adams individually, and if the requisite diversity of citizenship exist, or if the case arise under the Constitution or laws of the United States, the question whether he is so identified with the State that he is exempt from prosecution, on account of the matters set up in the particular bill, are more properly the subject of demurrer or plea than of motion to dismiss. This seems to have been the opinion of Chief Justice Marshall in *Osborn* v. *Bank of the United States,* 9 Wheat. 738, 858, wherein he makes the following observation: 'The State not being a party on the record, and the court having jurisdiction over those who are parties on the record, the true question is not one of jurisdiction, but whether, in the exercise of its jurisdiction, the court ought to make a decree against the defendant; whether they are to be considered as having a real interest, or as being only nominal parties.' " Again, 180 U. S. 38: "But where the suit is against an individual by name, and he desires to plead an exemption by reason of his representative character, he does not raise a question of jurisdiction in its proper sense.  .  .  .  But whether this is a question of jurisdiction or not, we think it should be raised either by demurrer to the bill or by other pleadings in the regular progress of the cause. . Motions are generally appropriate only in the absence of remedies by regular pleadings and cannot be made available to settle important questions of law." Cases were cited, and it was further observed that in *Fitts* v. *McGhee,* 172 U. S. 516, the question whether the officers proceeded against "were representatives of the State was disposed of upon answers filed."

The suit at bar has not the "palpable" evidence of being a suit against the State by being against the State by name. Do the allegations of the bill make it such?

The suit is brought against appellee, described as a citizen of Michigan, by appellants, described as citizens of Illinois. It is true it is alleged that appellee is the state dairy and food commissioner of Michigan, and that by an act of the general assembly of the State, passed the second of June, 1893, the office of dairy and food commissioner was created, and that it was by such act and amendatory acts made the duty of appellee as commissioner "to attend to the enforcement of all the laws of the State of Michigan against the unlawful labeling, fraud, adulteration or impurity of foods, sold, offered for sale, exposed for sale or had in possession with intent to sell in the State of Michigan," and that it is the duty of the commissioner is clearly set forth in the acts.

It is alleged that it is his duty to prosecute violators of the act. That it came to the notice of the appellants that the appellee questioned the legality of some of the food products manufactured by them and sold in Michigan, and that they represented, through their attorney, that they were manufacturers of certain brands of maple and cane syrups which they were desirous of having properly labeled, that appellee refused to accept the statement of the attorney as being made in good faith, and stated that none of the syrups manufactured by appellants contained any maple syrup whatever, but were mixtures of inferior syrups containing substances which produced "imitation maple flavors," and accused appellants of not being desirous of "obtaining a wise and just interpretation of the food laws of the State of Michigan," and refused to give appellants' attorney "any information as to how a brand of maple syrup and cane syrup should be properly and legally labeled under said food laws," and refused to consider how such syrups should be labeled, and insisted that he would only permit appellants' syrups "to be sold simply as 'syrup,' without any qualifying words whatever to inform purchasers of the same of the nature of such syrups." The bill sets forth efforts made by appellants to have the question of the legal labeling of their products decided by the Assistant Attorney General of the State,

and asked the latter officer to bring a test case in the courts of Michigan or "arbitrate the question at issue." To which the Assistant Attorney General replied "that they did not arbitrate matters in Michigan, but that they were 'fighters.'"

It is alleged that appellants were advised by their attorney that the proper course for them to pursue would be to label their "Westmoreland" and "Triumph" brands of syrups as nearly as possible in accordance with the laws of Michigan, and in compliance with that opinion they devised labels which described the "Westmoreland" as a brand of pure maple syrup and pure rock candy syrup, and the "Triumph" as a "delicious brand" of the same syrups. And it is alleged that both brands are composed of maple syrup and cane syrup, "and no other ingredients whatever," and that rock candy syrup is the purest kind of cane syrup, and is the only cane syrup used by appellants.

It is alleged that appellants have shipped into the State of Michigan said brands of syrups labeled and branded as aforesaid and that shortly after such shipment the appellee "assumed a hostile attitude towards all of said syrups and contended and persists in contending that the labeling upon said syrups does not comply with the laws of the State, and that he and his inspectors "at once commenced a systematic crusade" against the sale of the syrups, and appellant is informed that appellee contends that "the words 'maple syrup' should not appear on any of the said labels in any manner or form whatever, even though said syrups actually contained a representative proportion of pure maple syrup." The bill contains the following paragraph:

"Your orators further represent that they are informed and believe that the said crusade, waged against their said brands of syrup by the said Arthur C. Bird and his inspectors, is not in good faith, but that the same is actuated by malice and ill will on the part of said Arthur C. Bird towards your orator, growing out of the conference between your orators' said attorney and the said Arthur C. Bird hereinbefore referred to,

and that the activity of said Arthur C. Bird to prevent the sale of said brands of syrups is caused by the malicious desire on the part of Arthur C. Bird to ruin your orators' business in the State of Michigan."

It is further alleged that "the crusade against said brands of syrups" is conducted by appellee and his food inspectors, acting under his direction, by visiting all grocers, merchants and dealers in the syrups, and informing them that by selling said syrups they would subject themselves to criminal prosecution. And that it has been the custom and practice of appellees since the shipment of the syrups to the State to write numerous letters to dealers in the State, warning them that the syrups were illegally labeled, and directing them to return all such syrups to appellants, and directing such dealers to make prompt reply "as to what course they had pursued in relation to said syrups," and what action they had taken to return the same.

It is also alleged that the food inspectors, under the direction of appellee, forcibly removed appellants' brands of syrups from the shelves of dealers, against the consent of said dealers. And "that in no case, so far as your orators are informed and believe, was any sample taken of such syrups so taken from the shelves as aforesaid, nor were the said syrups sealed as required by the statutes of the State of Michigan, nor were any prosecutions ever commenced against said grocers or dealers, although ample time has elapsed since the acts complained of as aforesaid."

The bill sets forth the efforts of appellants to have appellee commence prosecution against their agents and jobbers and against grocers and dealers handling their syrups, so that they might have an opportunity of defending the legality of their syrups "in the proper courts of the State of Michigan, and in a proper manner." These efforts, it is alleged, have failed; and it is further alleged that in all the acts and doings of the appellee complained of he was and is acting as a private citizen of the State, but "under cover of his said office of dairy and food commissioner." That his powers and duties as such of-

ficer are clearly defined in the statutes to which reference is made.

The intimidating effect of the acts of appellee upon the dealers in the syrups is set out and the detriment resulting therefrom to appellants detailed.

It is manifest from this summary of the allegations of the bill that this is not a suit against the State. *Cunningham* v. *M. & B. Rd. Co.*, 109 U. S. 446; *Pratt Food Co.* v. *Bird*, 148 Michigan, 631. It is not a suit, as was *Arbuckle* v. *Blackburn, supra*, to restrain a criminal prosecution. Indeed, the bill alleges that a criminal prosecution was invited by appellant and refused by appellee, and refused, it is alleged, to serve the purpose of what the bill denominates a "crusade" against the syrups of appellants, and in dereliction of duties enjoined by the statutes of the State.

*Decree reversed and the case remanded for further proceedings.*

Mr. Justice Harlan concurs in the decree.